UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

| | |
|---|---|
| **DARRYL SHAYNE OWENS,**  **Plaintiff,**  V.  **CAROLYN W. COLVIN, Acting Commissioner of Social Security,**  **Defendant.** | **CIVIL ACTION NO. 0:14-cv-00164 -KKC**  **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. [DE 21; 22.] The Claimant, Darryl Shayne Owens, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief from an administrative decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her

>physical or mental ability to do basic work activities—the claimant is not disabled.
>
>3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
>4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
>5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)).

The claimant bears the burden of proof through the first four steps of the analysis; but if the ALJ reaches the fifth step without finding the claimant disabled, then the burden shifts to the Commissioner. *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). The Commissioner satisfies the burden of proof at the fifth step by finding that the claimant is qualified for—and capable of performing—jobs that are available in the national economy and may rely upon the testimony of a vocational expert ("VE") regarding the range of potential jobs. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Darryl Shayne Owens ("Claimant") filed his claim for SSI on July 27, 2011, alleging an onset date of October 1, 2008. [TR 279]. The agency denied his application initially and upon reconsideration. [TR 279.] Claimant requested review by an ALJ, and a hearing was held on April 25, 2013. [TR 299–337]. The ALJ subsequently issued an unfavorable decision on June 14, 2013. [TR 279–291].

Claimant has past relevant work as a railroad maintenance worker, vehicle loader, construction worker. [TR 329]. He alleges disability due to degenerative disc problems in his spine, shoulder, and left arm, and depression. [DE 21-1 at 1].

First, the ALJ determined that Claimant has not engaged in substantial gainful activity since his application date of July 27, 2011. [TR 281]. Second, the ALJ found that Claimant suffers from the following severe impairments: degenerative disc disease of the cervical and lumbar spine and left AC degenerative joint disease [TR 281]. Third, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 283].

Next, the ALJ reviewed the record to determine Claimant's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding Claimant's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529. After reviewing all of the evidence, the ALJ determined that Claimant has the RFC to perform light work, with the following limitations: sit six hours out of an eight hour workday; stand six hours out of an eight hour workday; walk six hours out of an eight hour workday; frequently reach overhead bilaterally; frequently push/pull with the lower extremities; frequently climb ramps and stairs and crouch; occasionally stoop, kneel, and crawl; never climb ladders, ropes, or scaffolds; should avoid exposure to unprotected heights and dangerous moving mechanical parts, work on uneven surfaces, and concentrated exposure to extreme cold temperatures and vibrations. [TR 283].

After establishing Claimant's RFC, the ALJ continued to the fourth step. The ALJ asked the VE whether a hypothetical individual with Claimant's vocational factors and RFC could perform any past relevant work. [TR 330]. The VE testified that this hypothetical individual could not perform any past relevant work. [TR 330]. Thus, the ALJ moved to the fifth step. The ALJ asked if this hypothetical individual could make an adjustment to other work and the VE noted that this hypothetical individual could perform a number of light and sedentary jobs, including marker or labeler, machine operator, or hand packer. [TR 331]. Therefore, the ALJ found Claimant not disabled. [TR 290.]

The ALJ's decision that Claimant is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied Claimant's request for review on September 9, 2014. [TR 1-6]. Claimant has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm. of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v.*

*Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV. ANALYSIS

On appeal, Claimant presents three issues for review. First, he argues that the ALJ erred in finding that his anxiety and depression are not severe impairments. Second, he asserts that the ALJ erred by discounting the opinions of his treating sources. Third, he argues that that the ALJ erred when determining Claimant's RFC and posing questions to the VE.

*1. The ALJ's determination that Claimant's anxiety and depression are non-severe is legally irrelevant.*

Claimant first argues that the ALJ erred by not finding that his anxiety and depression are severe impairments. The severity determination at step one is "a de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998). Its purpose is simply to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human* Services, 773 F.2d 85, 89 (6th Cir. 1985). The fact that some of Claimant's impairments were deemed to be non-severe at step two is "legally irrelevant" in this case because the ALJ found that other impairments were severe and proceeded in the sequential evaluation process. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)(holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the

analysis, the question of whether the ALJ characterized any other alleged impairments as severe or not severe is of little consequence.") In this case, the ALJ went on to determine Plaintiff's RFC in between steps three and four. At that point, the ALJ was required to consider his medically determinable impairments, both severe and non-severe. *See* 20 C.F.R. § 416.945(a)(2). Therefore, it is legally irrelevant that the ALJ found that Claimant's anxiety and depression were non-severe.

*2. The ALJ did not err in discounting the opinions of Dr. Hughes or Ms. Neill.*

Next, Claimant argues that Dr. Hughes and Ms. Neill are treating sources, and that the ALJ erred by failing to provide good reasons for discounting their opinions. [DE 21-1 at 5-10.]

First, Ms. Neill, a social worker, is not a treating source, so her opinion is not entitled to deference. A social worker is not an "acceptable medical source" and, therefore, cannot be a "treating source." 20 C.F.R. §§ 404.1502, 404.1513(a). Thus, contrary to Claimant's assertions, the ALJ did not err by not affording controlling weight to Ms. Neill's opinion. Even though it was not entitled to the deference of a treating physician, the ALJ still noted that Ms. Neill's opinion was "not adequately explained and supported by references to objective signs and findings, but briefly explained with conclusory averments," and that "her opinion is not consistent with the rest of the objective medical evidence of record, which indicates the claimant's mental condition is ameliorated with medication and abstinence from mind-altering substances," which are good reasons for discounting her opinion. [TR 288.]

Second, Dr. Hughes is a treating source. However, the ALJ provided good reasons for discounting his opinion.

6

An ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. § 404.1527(d). Not all medical opinions, however, are treated equally. The opinions of treating physicians, "medical professionals most able to provide a detailed, longitudinal picture," are *generally* afforded the greatest deference. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)). The ALJ can reject the opinion of the treating physician "if good reasons are identified for not accepting it." *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (holding that an ALJ may reject the opinion of a treating physician if the treating physician's opinion is divorced from supporting objective evidence).

In this case, the ALJ gave Dr. Hughes' opinion "little weight." [TR 36.] Substantial evidence supports the ALJ's decision to discount Dr. Hughes' opinion. First, referencing and describing Dr. Hughes' April 8, 2013, and April 30, 2013, opinions, the ALJ noted that Dr. Hughes gave two different functional assessments within a two-week period. [TR 287.] An ALJ may find that a doctor is less credible where the doctor's own assessments are inconsistent. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc).

Second, the ALJ noted that Dr. Hughes "does not support his functioning assessment with objective evidence." [TR 287.] Third, she observed that Dr. Hughes' opinion is inconsistent with the Claimant's own testimony about his functional limitations, including his ability to sit and stand, and the fact that he cares for pet goats, helps with household

7

chores, shops twice a week, and plays with his grand neice. [TR 287.] Finally, the ALJ found that the severe limitations stated by Dr. Hughes are not supported by the objective medical evidence. [TR 287.] The ALJ cited objective medical evidence showing, among other things, normal grip strength, normal strength and range of motion in the upper extremities, and full range of motion of the cervical spine except for moderate limitation of the left lateral rotation, which contradicted Dr. Hughes' opinion. [TR 287.] The Sixth Circuit has instructed that "[w]here the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, [it] generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 175-76 (6th Cir. 2009). Thus, the ALJ articulated good reasons for discounting Dr. Hughes' opinion.

*3. The ALJ did not err in determining Claimant's RFC or posing questions to the VE.*

Lastly, Claimant argues that the ALJ omitted certain limitations from his RFC and relied on erroneous questions to the VE which did not adequately account for Claimant's limitations. [DE 21-1 at 11- 12.] Specifically, Claimant takes issue with the ALJ's finding that Claimant was able to perform "frequent bilateral overhead reaching" and the fact that no limitations regarding Claimant's anxiety and depression were included in the RFC.

An ALJ is required to "assess a claimant's [RFC] based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). No single medical source opinion is conclusive on this issue, nor can Claimant's subjective complaints of pain or other symptoms alone establish disability. SSR 96-5p, 1996 WL 374183, at *2, 4-5; 20 C.F.R. § 416.929(a).

In reading the ALJ's decision, it is evident that the ALJ fully considered all of the medical evidence in the record in making her determination of Claimant's RFC. *See* [TR

283-288.] As Claimant himself notes, the ALJ discussed Claimant's medical records at length, including reports from multiple consultative examiners and treating sources, and Ms. Neill's report, in addition to Claimant's own subjective complaints. [TR 283-288.]

While some sources noted that Claimant was limited in overhead reaching, other evidence indicated that Claimant was not limited in this regard. For instance, even objective tests from Dr. Hughes' examination indicated that Claimant was not limited in overhead reaching. In discussing Claimant's left shoulder pain, the ALJ specifically noted that an electromyography did not shoe evidence of left upper extremity radiculopathy and that, upon examination, Claimant was observed to have normal grip strength and normal strength and range of motion of the upper extremities. [TR 284.] The ALJ further noted that one consultative examiner found that Claimant had a "full range of motion of the cervical spine except for moderate limitation of the left lateral rotation" and another consultative examiner noted only a "mildly limited range of motion to the left side" and "no evidence of muscle weakness." [TR 284.] Thus, while Claimant is adamant that the medical evidence in this case categorically prevents him from performing overhead reaching, the ALJ cited evidence to the contrary. Even if this Court would have evaluated the evidence differently and reached a different conclusion, substantial evidence supports the ALJ's finding that Claimant can frequently reach overhead, so it must be affirmed. *Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 854-55 (6th Cir. 2010)("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence."). In fact, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Claimant also argues that the ALJ erred by relying on the VE's answers to questions that did not contain limitations based on Claimant's anxiety or depression. [DE 21-1 at 12.] Rather, Claimant asserts that the ALJ should have relied on the question that stated the hypothetical individual would be off task for twenty percent of an eight hour workday. [DE 21-1 at 4-5, 12.] In response to that question, the VE stated that Claimant could not perform any jobs. [TR 333-334.]

The ALJ did not err by not relying on the hypothetical question that Claimant cites because that question was based upon Ms. Neill's opinion that Claimant would be off task approximately twenty percent of the time. *See* [DE 21-1 at 5.] As previously explained, the ALJ properly discounted Ms. Neill's opinion, so it was not an error for the ALJ not to rely on the answer to a question formulated using her report.

Finally, Claimant also asserts that the ALJ erred by failing to explicitly analyze Claimant's sister's affidavit, which describes Claimant's "limitations from pain related symptoms including difficulty concentrating or focusing due to chronic pain, depression causing social withdrawal, and severe sleep disturbance." [DE 21-1 at 3-4.]

"[An ALJ] is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.,* 413 F. App'x 853, 855 (6th Cir. 2011) (citing 20 C.F.R. § 404.953.). An ALJ need not explain the weight given to a non-medical source in every case, but "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P 2006 WL 2329939 at *6. In *Lohr v. Comm'r of Soc. Sec.,* 559 F. Supp.

10

2d 784, 793 (E.D. Mich. 2008), a district court found reversible error where an ALJ failed to discuss the non-medical reports of two individuals who stated that claimant was unable to hold competitive employment. In *Lohr*, one individual who submitted a non-medical opinion was the claimant's employer and had been employed at the workshop where claimant worked for thirty years, and the other was an "employment training specialist." *Id*. at 793. The *Lohr* court found that these opinions were highly relevant to Claimant's ability to work because both individuals observed claimant during the course of his employment in a supervisory capacity. *Id*. Therefore, the ALJ in that case erred by failing to discuss their opinions in his decision.

The present case is distinguished from *Lohr*. While the Court does not take lightly the seriousness of the limitations she described, the opinion of Claimant's own sister is simply not as probative as the opinions of a claimant's supervisor and an employment specialist who each observed the claimant's on the job performance. Unlike in *Lohr*, this opinion was not likely to have an effect on the ultimate outcome of the case, so the ALJ was not obliged to explicitly analyze it in her decision. Moreover, the ALJ "otherwise ensure[d] that that the discussion of the evidence in the … decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p. The ALJ analyzed and discounted Ms. Neill's opinion, which also dealt with Claimant's mental impairments. Specifically, the ALJ stated her finding that other objective evidence in the record showed that "claimant's mental condition is ameliorated with medication and abstinence from mind-altering substances." [TR 288.] Thus, even without directly analyzing Claimant's sister's affidavit, the ALJ sufficiently explained why she was not including Claimant's mental impairments in the RFC or relying on questions to the VE that contained mental limitations.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment [DE 21] is **DENIED**;

2. The Commissioner's motion for summary judgment [DE 22] is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated April 12, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY